**KAISER STEEL CORPORATION, Petitioner,**

v.

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, and Jesse Sainz, Respondents.**

No. 83–1940.

United States Court of Appeals, Tenth Circuit.

Nov. 27, 1984.

Paul A. Kastler of Kastler Law Offices, Ltd., Raton, N.M., for petitioner.

Edward J. Scheunemann, Denver, Colo. and Allen H. Feldman, Washington, D.C. (Francis X. Lilly, Karen I. Ward and Heidi

Ann Lazar-Meyn, U.S. Dept. of Labor, Washington, D.C., with them on brief), for respondents.

Before BARRETT and DOYLE, Circuit Judges, and BOHANON, Senior District Judge.*

BARRETT, Circuit Judge.

Kaiser Steel Corporation (Kaiser Steel) seeks judicial review in this Court of an order by an Administrative Law Judge (ALJ) in the Office of Workers' Compensation Programs, Department of Labor, awarding disability benefits to Jesse Sainz, a former coal miner and employee of Kaiser Steel. The award was made pursuant to the Black Lung Benefits Act (the Act), 30 U.S.C. §§ 901–945 (Supp. V 1981). The ALJ's decision was found to have been based on substantial evidence and was therefore affirmed by the Benefits Review Board, and Kaiser Steel now appeals to this Court. Jurisdiction is properly in this Court in accordance with 30 U.S.C. § 932(a) (Supp. V 1981) (Black Lung Benefits Act), which incorporates the review provisions of 33 U.S.C. § 921(c) (1976) (Longshoremen's and Harbor Workers' Compensation Act).

Jesse Sainz was employed as an underground coal miner in New Mexico for twenty-eight years during which time he held a variety of jobs in various dusty environments. He sought early retirement at age 62 because he had experienced two choking episodes while working under hazardous conditions in the mines. He feared that continued employment in his condition might jeopardize his fellow miners' lives. He moved to Tampa, Florida, and filed a claim for benefits under the Act on October 24, 1978. Kaiser Steel contested the claim. The claim was forwarded to an ALJ for a formal hearing.

The medical evidence presented at that hearing was as follows:

*X-rays*

1. X-ray dated November 18, 1978, examined by Samo J. Dovgan, M.D.; showed P and S pulmonary opacities which are small both irregular and rounded having a 2/1 profusion as measured by the I.L.O./V.I.C.C. classification. (These results establish the presence of pneumoconiosis under 20 C.F.R. § 410.428 (1984).)

2. X-ray dated July 23, 1979, examined by Charles Scoggin, M.D.; showed results consistent with coal workers' pneumoconiosis.

*Ventilatory Test*

1. Test date: November 17, 1978
   Miner's height: 61″
   FEV: 2.22 L
   MVV: 76 L/M

*Blood Gas Tests*

1. Test date: November 18, 1978
   $PCO_2$: 28.8 mm/HG
   $PO_2$: 57 mm/HG
2. Test date: November 30, 1978
   $PCO_2$: 29.8 mm/HG
   $PO_2$: 60 mm/HG
3. Test date: July 23, 1979
   $PCO_2$: 32 mm/HG
   $PO_2$: 64 mm/HG

*Medical Examinations and Reports*

1. Dr. Keil examined claimant on November 17, 1978, at the request of the Department of Labor. The report diagnosed "chronic pulmonary disease, obstructive—with hypoxia at rest." The report stated that claimant can "function comfortably only with minimal exertion," and that this condition was related to dust exposure in claimant's coal mine employment. In Dr. Keil's testimony before the ALJ, he stated that his earlier opinion relating the claimant's condition to coal mine dust exposure was no longer correct. Because of his reading of the current medical literature, he now felt that

---

* Of the United States District Court for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

simple coal workers' pneumoconiosis could never be disabling.

2. Dr. Scoggin examined claimant on July 23, 1979 at the request of Kaiser Steel. His report stated as follows: "... it is my conclusion that his chest radiogram is consistent with coal workers pneumoconiosis; however his pulmonary disability is most consistent with the diagnosis of chronic obstructive pulmonary disease" (i.e., emphysema caused by cigarette smoking). In a later deposition, he stated that "simple coal workers' pneumoconiosis does not lead to respiratory impairment," and again, "simple coal workers pneumoconiosis is not a disabling disorder."

The ALJ found in this case that the "interim presumption" contained in the Department's regulations had been triggered. 20 C.F.R. § 727.203 (1984). This presumption is that a person who has worked as a coal miner for at least ten years will be presumed to be totally disabled due to pneumoconiosis if *any one* of the following medical requirements is met: (1) An x-ray establishes the existence of pneumoconiosis, (2) ventilatory test results fall below certain numbers (for a miner's height of 67" or less, FEV must be equal to or less than 2.3, and MVV must be equal to or less than 92), (3) blood gas test results fall below certain numbers (for a $PCO_2$ value of 30 or below, $PO_2$ must be equal to or less than 70 mm/HG), or (4) other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment, establishes the presence of a totally disabling respiratory or pulmonary impairment. 20 C.F.R. § 727.203(a)(1)–(4) (1984).

The ALJ found that Sainz was presumed totally disabled under all four parts of the "interim presumption." He then proceeded to determine whether Kaiser had successfully rebutted the "interim presumption" under part (b). Part (b) provides four different methods by which the presumption established in part (a) can be rebutted: (1) the evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work; or (2) in light of all relevant evidence it is estab-

lished that the individual is able to do his usual coal mine work or comparable and gainful work, or (3) the evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment, or (4) the evidence establishes that the miner does not, or did not, have pneumoconiosis. 20 C.F.R. § 727.203(b)(1)–(4) (1984).

The ALJ found that Kaiser Steel had not successfully rebutted the "interim presumption" under any of these methods. Kaiser Steel argued that the testimony of both doctors that pneumoconiosis was not disabling showed that Sainz' disability did not arise in whole or in part out of coal mine employment, therefore effecting a method three rebuttal. However, the ALJ rejected the doctors' opinions on this matter because they were hostile to the basic premise of the Act, namely that pneumoconiosis is a disabling disease. With the "interim presumption" thus triggered and unsuccessfully rebutted, the ALJ found Sainz to be disabled due to pneumoconiosis and accordingly awarded benefits.

Kaiser Steel now attacks the ALJ's ruling, raising three contentions on appeal: (1) the "interim presumption" was improperly invoked because the uncontradicted medical testimony in the case showed that Sainz was in fact not disabled due to pneumoconiosis, (2) whether or not it was properly invoked, the "interim presumption" was rebutted under both method two and method three, and (3) the portions of the "interim presumption" that allow a presumption of disability based on either X-ray results or blood gas test results (20 C.F.R. § 707.203(a)(1) and (a)(3) (1984)) are unconstitutional because they violate the Equal Protection Clause and the Due Process Clause of the Fourteenth and Fifth Amendments of the U.S. Constitution.

■ In reviewing the factual findings of the ALJ that Kaiser Steel has challenged, our inquiry is limited to the question whether his findings were based on substantial evidence. If so, we must affirm his decision. *American Coal Co. (Energy Mutual Insurance Co.) v. Benefits Review Board,* 738 F.2d 387 at 391 (10th Cir. July

6, 1984), *citing Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797 (7th Cir. 1977). The instant case thus contains two basic issues. First, were the ALJ's findings of fact based on substantial evidence? Second, are the "X-ray" and "blood gas" parts of the "interim presumption" (20 C.F.R. § 727.203(a)(1) and (a)(3) (1984)) constitutional?

The "substantial evidence" standard has been defined by the United States Supreme Court as follows: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229, 59 S.Ct. 206, 216–17, 83 L.Ed. 126 (1938). This standard is less rigorous than the burden of proof at a jury trial. In reviewing the findings of the trier of fact, the court cannot reweigh the evidence, but may only inquire into the existence of evidence to support the trier of fact. *Peabody Coal Co. v. Benefits Review Board*, 560 F.2d 797, 802 (7th Cir.1977). Moreover, the trier is not bound to accept the opinion of any given medical officer, but may weigh the medical evidence and draw his own inferences. Such inferences, if based on adequate evidence, will be upheld on appeal. *Id.*

With this deferential standard in mind, we now examine both parts of the ALJ's decision. First, we find that the ALJ's finding that the "interim presumption" was triggered under all four of its parts (20 C.F.R. § 707.203(a)(1)–(4) (1984)) was clearly supported by substantial evidence. Sainz had been engaged in coal mine employment for at least ten years. Both of the x-rays introduced into evidence established the existence of pneumoconiosis. 20 C.F.R. § 707.203(a)(1) (1984). The ventilatory test that was performed yielded results that triggered the presumption. 20 C.F.R. § 707.203(a)(2) (1984). All three blood gas tests that were performed yielded results that triggered the presumption. 20 C.F.R. § 707.203(a)(3) (1984). Finally, both doctors testified that Sainz had a disabling pulmonary disease. 20 C.F.R. § 707.-203(a)(4) (1984).

Second, we find that the ALJ's finding that Kaiser Steel had failed to rebut the presumption of disability under either method two or method three (20 C.F.R. § 707.203(b)(2) or (b)(3) (1984)) was also based on substantial evidence. These methods of rebuttal are not accomplished merely by going forward with any evidence at all; the word "establish" that appears in all four parts of the rebuttal section (20 C.F.R. 727.203(b)(1)–(4) (1984) indicates that the burden of persuasion, and not merely the burden of production (i.e., of "going forward") is shifted to the employer once the "interim presumption" is triggered. *Alabama By-Products Corporation v. Killingsworth*, 733 F.2d 1511, 1513–15 (11th Cir.1984).

Kaiser Steel made no showing that Sainz was still able to do his usual coal mine work or comparable work. Indeed, the uncontradicted medical evidence introduced by Kaiser Steel itself showed that Sainz could no longer work in the mines. Therefore, Kaiser Steel failed to accomplish a method two rebuttal.

Kaiser Steel also failed to accomplish a method three rebuttal. Although both doctors at the hearing testified that Sainz' disability was caused by emphysema due to cigarette smoking and not by pneumoconiosis, this conclusion was based on their shared opinion that simple pneumoconiosis is never disabling. It is a basic premise of the Act that simple pneumoconiosis can in fact cause disability, and the doctors' opinions were contrary to that premise; *Blevins v. Peabody Coal Co.*, 1 BLR 1–1023, 9 BRBS 510 (1978), *rev'd and remanded on other grounds sub nom Peabody Coal Co. v. Director, OWCP*, 644 F.2d 886 (6th Cir.1981); see also 30 U.S.C. § 901 (1982). Since an adjudicator may reject or accord little weight to the opinion of a physician whose basic medical assumptions are contrary to the findings and purposes of the Act, *Smaroff v. Bethlehem Mines Corp.*, 2 BLR 1–33, 9 BRBS 840 (1979), the ALJ properly rejected that part of the doctors' testimony that was based on the offending opinion. With the doctors' conclusions as to the cause of Sainz' dis-

ability rejected, Kaiser Steel was left with no evidence which established that the disability did not arise in whole or in part out of coal mine employment, and this attempt at a method three rebuttal failed.

We realize that the "interim presumption" regulation and its prescribed methods of rebuttal leave responsible coal mine operators with a heavy burden. The term "pneumoconiosis," as used in the Black Lung Act and accompanying regulations, includes a variety of medical conditions (see 20 C.F.R. § 727.202 (1984)), and complex questions of medical causation are often involved in individual coal miners' disability cases. Congress recognized this situation and, in adopting the Black Lung Benefits Act and its amendments, intended that doubts be resolved in favor of the disabled miner absent definitive medical conclusions. *Bethlehem Mines Corp. v. Warmus*, 578 F.2d 59, 63 (3d Cir.1978); *Bozwich v. Mathews*, 558 F.2d 475, 480 (8th Cir.1977). It is the function of the Department of Labor and of this Court to implement that legislative will, not to second-guess its wisdom.

Kaiser Steel also contends that the "x-ray" and "blood gas" parts of the "interim presumption" (20 C.F.R. § 727.-203(a)(1) and (a)(3) (1984)) are constitutionally defective because there is no rational connection between the facts proved (the fact of ten years' coal mine employment combined with either the x-ray results or the blood gas results) and the facts presumed (total disability due to pneumoconiosis). However, it is well-settled law that a federal court should not decide questions of constitutionality unless such are unavoidable or are absolutely necessary to a decision of the case. *Rosenberg v. Fleuti*, 374 U.S. 449, 451, 83 S.Ct. 1804, 1806, 10 L.Ed.2d 1000 (1963); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 346–47, 56 S.Ct. 466, 482–83, 80 L.Ed. 688 (1936), (Brandeis, J., concurring). Here, Sainz would be entitled to disability benefits even if Kaiser Steel were to prevail in its attack on parts (a)(1) and (a)(3) of the "interim presumption," because disability due to pneumoconiosis would still be presumed under either part (a)(2) or part (a)(4).

Therefore, it would be inappropriate for this Court to rule on the constitutional issue that Kaiser Steel has raised.

AFFIRMED.