Mae GARCIA, Widow of Simon A. Garcia, Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR, Respondent.

No. 87–2255.

United States Court of Appeals, Tenth Circuit.

March 14, 1989.

**1414**

Roberto C. Armijo of Civerolo, Hansen & Wolf, Albuquerque, N.M., for petitioner.

Richard Zorn, Atty. (George R. Salem, Sol. of Labor, Donald S. Shire, Associate Sol., Barbara J. Johnson, Counsel for Appellate Litigation, and Sylvia T. Kaser, Asst. Counsel for Appellate Litigation, with him on the brief), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before LOGAN and TACHA, Circuit Judges, and ANDERSON, District Judge.[*]

LOGAN, Circuit Judge.

Petitioner Mae Garcia seeks review of a decision of the Benefits Review Board (Board) affirming the denial of black lung disability benefits to her late husband, Simon Garcia.[1] Initially, we must decide whether the Board erred in finding substantial evidence to support the denial of benefits by the administrative law judge (ALJ). Because we hold that the Board did err, we must address whether its decision can be affirmed on an alternative ground raised for the first time on appeal by respondent Director of the Office of Workers' Compensation Programs (Director).

Simon Garcia began employment as an underground coal miner in 1930, working intermittently in various coals mines until his induction into the armed forces in 1941. Following his discharge from the military, Garcia worked in the construction industry. From 1951 to 1957, he was employed in a copper mine and wore a respirator to protect himself from dust exposure. Garcia then returned to construction work until he secured a job as a truck driver for Martin–Marietta in 1962. Garcia continued this employment until he was forced to retire in 1972 after suffering two heart attacks.

Garcia testified before the ALJ that the coal mines were very dusty and that he was not provided with protective equipment until the late 1930s. Garcia attested to continuing breathing difficulties, commencing during his years in the military, which ultimately led him to abandon his construction-employment. In a 1980 physical examination, Garcia complained of increasingly severe exertional dyspnea[2] and orthopnea.[3] Garcia had been hospitalized approximately nine months before the examination, suffering from pulmonary edema[4] and anasarca.[5]

Garcia applied for black lung disability benefits under Title IV of the Federal Coal Mine Health and Safety Act of 1969 (the Act), as amended, 30 U.S.C. §§ 901–945. The Act provides benefits to coal miners who are totally disabled due to, or to surviving dependents if the miners' deaths were due to, coal workers' pneumoconiosis, colloquially known as black lung disease. To qualify for benefits, a living miner must establish that he is totally disabled due to pneumoconiosis which arose out of his coal

---

[*] The Honorable Aldon J. Anderson, Senior United States District Judge for the District of Utah, sitting by designation.

1. Simon Garcia, the original claimant, died on October 26, 1986, and his wife was substituted as claimant. Our references to "Garcia" will be either to Simon, the claimant-miner, or Mae, the petitioner, as the context dictates.

2. Exertional dyspnea is difficult or labored breathing provoked by physical effort. *Dorland's Illustrated Medical Dictionary* 486 (25th ed. 1974).

3. Orthopnea is "difficult breathing except in an upright position." *Id.* at 1100.

4. Pulmonary edema is "abnormal, diffuse, extravascular accumulation of fluid in the pulmonary tissues and air spaces" and is characterized clinically by intense dyspnea. *Id.* at 495.

5. Anasarca is generalized massive edema. *Id.* at 80.

mine employment. 20 C.F.R. § 410.410(b)(1); *id.* § 725.201(a)(1).

After Garcia's claim was rejected by a Department of Labor claims examiner, Garcia obtained a hearing before an ALJ, who also denied benefits. The ALJ found that Garcia had not established at least ten years of coal mine employment and, thus, was not entitled to a presumption of total disability due to pneumoconiosis under interim regulation 20 C.F.R. § 727.203.[6] The ALJ then considered Garcia's claim under the permanent criteria found at 20 C.F.R. § 410, subpt. D.[7] The ALJ found that Garcia had pneumoconiosis arising out of his coal mine employment, but concluded that Garcia was not entitled to benefits because he had not shown that his pneumoconiosis was totally disabling. On appeal the Benefits Review Board found the ALJ's decision supported by substantial evidence and affirmed the denial of benefits. We must determine if the Board erred in finding the ALJ's decision supported by substantial evidence. *American Coal Co. v. Benefits Review Bd.*, 738 F.2d 387, 391 (10th Cir. 1984).

■ Substantial evidence review is an amorphous concept, but it is rooted in the notion that courts of appeals must carefully scrutinize the reasoning of the factfinder to determine if there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). Substantial evidence is "more than a mere scintilla," *id.*, and we "must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951). Based on the record as a whole, we conclude that the Board erred in finding substantial evidence to support the decision denying benefits.

The medical evidence available to the ALJ and the Board consisted of the following: Garcia's 1980 physical examination conducted by Lawrence Repsher, M.D.; interpretations of Garcia's chest x-ray by Dr. Repsher and E.N. Sargent, M.D., a B-reader and Board-certified radiologist[8]; the results of Garcia's ventilatory and arterial blood gas studies; and a validation of the blood gas tests by Roger S. Mitchell, Jr., M.D.

The ALJ found, and the Director does not dispute, that Garcia had pneumoconiosis. Dr. Repsher, who is not a Board-certified radiologist or a B-reader, read Garcia's chest x-rays as 0/0, or negative, for pneumoconiosis. Dr. Sargent re-read the x-ray and classified it as 1/0, or positive, for pneumoconiosis. This positive x-ray established the existence of pneumoconiosis.

---

6. For the § 727 interim regulations to apply, the ALJ must have determined that Garcia's claim was filed on or before March 31, 1980. *See* 30 U.S.C. § 902(f); 20 C.F.R. §§ 718.1–.2, 727.2(d). Claims filed after March 31, 1980, are reviewed under the Department of Labor's permanent regulations found at 20 C.F.R. § 718. *See* 20 C.F.R. § 718.1–.2. The actual date Garcia's claim was filed is in dispute. *See* discussion *post* at 1416–1417.

7. Section 727.203(d) provides that if claimants are not eligible under § 727, "eligibility may be established under Part 718 of this subchapter as amended from time to time." Before its revision by the Department of Labor, § 718 simply incorporated by reference the regulations at 20 C.F.R. § 410, subpt. D. *See* 20 C.F.R. § 718.2 (1978). The Board has ruled that claimants with less than ten years of coal mine employment who filed for benefits on or before March 31, 1980, can establish eligibility under the § 410 regulations regardless of when the claim is adjudicated. *See, e.g., Muncy v. Wolfe Creek*

*Collieries Coal Co.*, 3 Black Lung Rep. 1–627, –629 (June 11, 1981). Two courts of appeals, however, have reached the opposite result. *Caprini v. Director, Office of Workers' Compensation Programs*, 824 F.2d 283, 284 (3d Cir.1987) (claims *adjudicated* after March 31, 1980, cannot be considered under § 410 regardless of when *filed;* revised § 718 regulations are only alternative to § 727); *Strike v. Director, Office of Workers' Compensation Programs*, 817 F.2d 395, 406 n. 9 (7th Cir.1987) (same). Under our disposition of this case, *see post* at 1416–1417, we need not decide this issue at this time.

8. "Board-certified" is defined by the regulations as "certification in radiology or diagnostic roentgenology by the American Board of Radiology, Inc. or the American Osteopathic Association." *See* 20 C.F.R. § 718.202(a)(1)(ii)(C). A "B-reader" is a physician who has passed a special proficiency examination in the evaluation and interpretation of x-rays for pneumoconiosis. *See id.* § 718.202(a)(1)(ii)(E).

*See* 20 C.F.R. § 410.414(a), .428(a)(1); *id.* § 718.102(b), .202(a)(1)(i). Because the ALJ found that Garcia's pneumoconiosis arose out of his coal mine employment, Garcia needed only to show that he was totally disabled due to pneumoconiosis to establish his right to benefits under the § 410 permanent criteria.

Pneumoconiosis may be found totally disabling based either on pulmonary function studies, 20 C.F.R. § 410.426(b); *id.* § 718.204(c)(1), or arterial blood gas tests, 20 C.F.R. § 410.424(a) & app.; *id.* § 718.204(c)(2). Garcia's pulmonary function tests did not produce values sufficient to establish total disability. The blood gas test results, however, did meet the criteria for total disability. In fact, Dr. Repsher described the results as "markedly abnormal," and Dr. Mitchell commented that the values were "grossly abnormal."

Under § 410.424(a) and the accompanying appendix, a miner with pneumoconiosis and qualifying blood gas results enjoys a rebuttable presumption of total disability due to pneumoconiosis, *see Maurizio v. Director, Office of Workers' Compensation Programs*, 2 Black Lung Rep. 1–116, –118 (Feb. 28, 1979); *Stevens v. Director, Office of Workers' Compensation Programs*, 1 Black Lung Rep. 1–386, –393 (Jan. 9, 1978), and the burden shifts to the Director to "establish[ ] that some condition other than pneumoconiosis was the primary cause of the miner's disability." *Saunders v. Director, Office of Workers' Compensation Programs*, 7 Black Lung Rep. 1–186, –188 (June 15, 1984) (per curiam); *see also Dunlap v. Director, Office of Workers' Compensation Programs*, 8 Black Lung Rep. 1–375, –376 to –377 (Nov. 22, 1985) (per curiam); *Maurizio*, 2 Black Lung Rep. at 1–118; 20 C.F.R. § 410.426(a) (pneumoconiosis must be "primary reason" for disability). Thus, unless the Director produced sufficient evidence to establish that pneumoconiosis was not the primary cause of Garcia's total disability, Garcia was entitled to benefits under the § 410 standards.[9]

In finding that the Director had produced sufficient rebuttal evidence, the ALJ relied on Dr. Repsher's report on Garcia's 1980 physical examination. Dr. Repsher found that Garcia became "quite dyspneic with any exertion," and that he had a "mild to moderate impairment of his cardiopulmonary reserve." Formal Records, Repsher's Consultation Note at 5, 6. According to Dr. Repsher, this condition was *"probably* due to very poor physical condition and his obesity." *Id.* at 6 (emphasis added). In the concluding section of the report, Dr. Repsher stated as follows:

"At the present time, I find no objective evidence of any intrinsic lung disease. Specifically, no evidence of coal worker's pneumoconiosis. I feel that his significant hypoxemia [10] is *probably* due to the combination of his massive exogenous obesity and the bilateral eventrations of the diaphragm resulting in considerable basilar shunning of blood through poorly ventilated lung tissue. Therefore, I find no evidence of any pulmonary impairment or disability either caused by or aggravated by Mr. Garcia's employment as an underground coal miner...."

*Id.* (emphasis and footnote added).

We hold that Dr. Repsher's report does not constitute substantial evidence to rebut Garcia's presumption of total disability due

---

9. We note that the ALJ may have misapprehended the effect of Garcia's qualifying blood gas results. The ALJ emphasized that the burden of establishing that the pneumoconiosis is totally disabling remained on Garcia despite his qualifying blood gas test. The ALJ appeared to reason that the rebuttable presumption of total disability under the § 410 regulations shifts only the burden of production, not the ultimate burden of persuasion, to the Director. The ALJ then found that the Director produced sufficient evidence to rebut Garcia's blood gas results. Because we hold that the Director failed to produce sufficient evidence to establish some condition other than pneumoconiosis as the primary cause of Garcia's disability, we need not decide whether the ultimate burden of persuasion or merely the burden of production is shifted to the Director. *See Kaiser Steel Corp. v. Director, Office of Workers' Compensation Programs*, 757 F.2d 1078 (10th Cir.1985) (presumption under 20 C.F.R. § 727.203 shifts burden of persuasion to party opposing entitlement).

10. Hypoxemia is deficient oxygenation of the blood. *Dorland's Illustrated Medical Dictionary* at 755.

to pneumoconiosis. In attempting to explain Garcia's blood gas test results, Dr. Repsher concluded that they "probably" were attributable to nonrespiratory causes. Standing alone, this qualified determination cannot discharge the Director's burden of establishing that something other than pneumoconiosis was the primary cause of Garcia's disability. *See Beavan v. Bethlehem Mines Corp.*, 741 F.2d 689, 692 (4th Cir.1984) (doctor's speculation about causes of abnormal blood gas results insufficient to rebut presumption of total disability); *Peabody Coal Co. v. Benefits Review Bd.*, 560 F.2d 797, 802 (7th Cir.1977) (hearing officer properly discredited qualified medical determination that was based, in part, on error); *Smith v. Director, Office of Workers' Compensation Programs*, 7 Black Lung Rep. 1–156, –158 (June 6, 1984) (per curiam) (doctor's conclusion that claimant's disability " 'probably due to smoking' " was "too speculative to constitute substantial evidence"). Moreover, Dr. Repsher's qualified conclusion was immediately preceded by an incorrect finding that Garcia was not afflicted with pneumoconiosis. The ALJ and the Board discounted this error because Dr. Repsher was the only physician of record with the benefit of "a complete picture of [Garcia's] health." *See* BRB Decision on Reconsideration at 2. In truth, Dr. Repsher did not have a "complete picture" of Garcia's health; his conclusions were based on a finding that Garcia did not have pneumoconiosis. This misdiagnosis greatly weakens Dr. Repsher's conclusion that Garcia's breathing impairment was nonrespiratory.

To support her finding of no total disability due to pneumoconiosis, the ALJ relied on the concluding statement in Dr. Repsher's report that there was "no evidence of any pulmonary impairment or disability either caused by or aggravated by" Garcia's coal mine employment. The quoted statement, however, does not touch upon the causal connection between Garcia's disability and the pneumoconiosis, which is at issue here; rather, Dr. Repsher's statement states a lack of causal relationship between Garcia's disease or impairment and his coal mine employment. In her finding that Garcia's pneumoconiosis arose out of his coal mine employment, the ALJ, in effect, rejected Dr. Repsher's ultimate conclusion. Further, there is *no* evidence in the record to support the ALJ's finding, based on Dr. Repsher's report, that Garcia "has no significant respiratory impairment which would affect his ability, on a respiratory basis, to perform coal mine work, or comparable gainful work activity." *See* ALJ's Decision issued 4/1/83 at 6. Thus, the Board erred in finding substantial evidence to support the ALJ's denial of benefits.

■ The Director urges us to affirm the Board's decision on the alternative ground that the ALJ should have applied the revised § 718 regulations and that under these standards Garcia is not eligible for benefits as a matter of law. According to the Director, Garcia's claim was filed with the Department of Labor on August 21, 1980,[11] and it is undisputed that the permanent criteria at 20 C.F.R. § 718 apply to claims filed after March 31, 1980. *See ante* note 6. Alternatively, the Director contends that the permanent criteria also apply to claims filed on or before March 31, 1980, if they are adjudicated after that date.

The Director concedes that these arguments were not presented to the ALJ or the Board,[12] but argues that we may reach these questions because they are merely new grounds for affirming the Board's decision. *See Helvering v. Gowran*, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *Stahmann Farms, Inc. v. United States*, 624 F.2d 958, 961 (10th Cir.1980).

**11.** Garcia's application is dated October 16, 1979, but was date stamped as received on August 21, 1980, by the Coal Mine Workers' Compensation District Office in Lakewood, Colorado.

**12.** It appears from the record that counsel for the Director was the first to imply that the § 727

interim regulations applied to Garcia's claim. Tr. 105. The Director, who presumably is an expert in this most complex regulatory field, has offered no explanation about why he took this initial position, when he discovered the alleged error, or why it was not brought to the attention of Garcia's counsel and the ALJ or the Board.

We agree that Fed.R.App.P. 4(a) does not require the Director to cross-appeal under the circumstances of this case, *see Dalle Tezze v. Director, Office of Workers' Compensation Programs*, 814 F.2d 129, 133 (3d Cir.1987), but we remand to the Board, rather than decide these issues now, for three reasons.

First, the record does not unequivocally support the Director's contention. The filing date attracted the ALJ's attention only one time during the hearing. The ALJ noted in passing the October 1979 signing date and the August 1980 date stamp, and stated that the latter date "apparently is when the department started to work on [Garcia's] claim." Tr. 82. Nothing was made by either party of this remark and the filing date was never made an issue by the Director. *See* Dir.Ex. 20 at 1. Rather than try to determine here what was the actual filing date, and whether the § 718 permanent criteria apply if the claim was adjudicated after March 31, 1980, though filed earlier, *see ante* note 7, a remand to develop an adequate record on this point seems the most appropriate course. *See Southard v. Director, Office of Workers' Compensation Programs*, 732 F.2d 66, 70 (6th Cir.1984).

Second, even if we were to decide that the § 718 regulations apply to this case regardless of when the claim was filed, we could not conclusively resolve the eligibility issue in the Director's favor. The ALJ did not consider Garcia's claim under the § 718 regulations, and we have already determined that there is not substantial evidence to support a denial of benefits under the § 410 regulations. If it is determined that the § 718 criteria apply, an evaluation of Garcia's claim in light of these regulations should be made by an ALJ, to whom Congress entrusted the initial adjudication of medical evidence, subject to review by the Board and this court. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *Caprini*, 824 F.2d at 285.

Finally, we believe that the Director's failure to raise this alleged error until the appeal to this court has seriously prejudiced the petitioner. Garcia is entitled to a remand so that he can supplement the record with additional relevant evidence [13] and make any additional legal arguments, including whether the Director has waived, or should be estopped from raising the issue of the application of the § 718 standards. *See Bernardo v. Director, Office of Workers' Compensation Programs*, 790 F.2d 351, 353–54 (3d Cir.1986). Accordingly, we REVERSE the decision of the Board and REMAND for further proceedings consistent with this opinion.

---

**13.** We note that the pathology report which apparently states the contributing causes of Garcia's death showed edema, emphysema, and anthracosilicosis lungs, the last of which is a regulatory definition of pneumoconiosis. Motion for Sub. of Surviving Wife as Claimant filed 2/2/87 Ex. A; 20 C.F.R. § 410.410(b)(1); *id.* § 718.201.