961 F.2d 1524
 Mauro MADDALENI, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent,
Pittsburg & Midway Coal Mining Company, Real Party in
Interest-Appellee.
 No. 90-9583.
 (BRB No. 86-2688).
 United States Court of Appeals,
Tenth Circuit.
 April 21, 1992.
 
 Colleen Parsley, of Wilderman & Linnet, P.C., Denver, Colo., for petitioner.
 James A. Kent, Jr., Middleburg, Va., for real party in interest-appellee.
 Before SEYMOUR and ANDERSON, Circuit Judges, and SAM,* District Judge.
 SEYMOUR, Circuit Judge.
 
 
 1
 Petitioner Mauro Maddaleni seeks review of a Benefits Review Board (Board) decision that affirmed the administrative law judge's (ALJ) order denying him benefits under the Black Lung Benefits Act.[1] See 30 U.S.C. § 901 (1988). Real Party In Interest-appellee Pittsburg & Midway Coal Mining Company is the designated responsible employer under the Act. See 20 C.F.R. §§ 725.492, 725.493 (1991). Maddaleni maintains the ALJ erred in his assessment of the medical evidence presented to rebut the interim presumption of disability. We affirm the Board's decision.
 
 
 2
 Maddaleni worked in coal mines for over thirty years. He retired in 1976 because breathing difficulties rendered him unable to perform certain aspects of his job. This claim for benefits was filed in 1979. Although the ALJ originally awarded benefits, the Board overturned that decision and remanded the case for further consideration.[2] On remand, the ALJ denied benefits based on his finding that Pittsburg had successfully rebutted the interim presumption of disability found in 20 C.F.R. § 727.203(a)(3). See id. § 727.203(b)(1)-(4) (outlining grounds sufficient to rebut presumption). The Board affirmed that decision.
 
 
 3
 As an appellate court, our role is to " 'scrutinize the [review board's decision] for errors of law and for adherence to the substantial evidence standard governing the Board's review of the administrative law judge's factual determinations.' " Mangus v. Director, Office of Workers' Compensation Programs, 882 F.2d 1527, 1532 (10th Cir.1989) (quoting Director, Office of Workers' Compensation Programs v. Gurule, 653 F.2d 1368, 1371 (10th Cir.1981)). Substantial evidence in this context is defined as " 'such relevant evidence as a reasonable person might accept as adequate to support a conclusion.' " Kaiser Steel Corp. v. Director, Office of Workers' Compensation Programs, 748 F.2d 1426, 1430 (10th Cir.1984) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)).
 
 
 4
 At the heart of Maddaleni's argument is his assertion that the ALJ "automatically disqualif[ied]" his doctors' reports because the physicians were not listed in the Directory of Medical Specialists (Directory). See Petitioner's Opening Br. at 6. The ALJ took administrative notice that Pittsburg's physicians were listed in the Directory. Maddaleni maintains the ALJ erred in giving greater weight to the employer's reports simply because the physicians involved were listed as specialists in the Directory. He argues the ALJ used the administrative notice process in a manner which gave the Directory listings greater value than the findings contained in the doctors' reports. The error, as he describes it, is in equating the noticed facts with substantial evidence.
 
 
 5
 The Administrative Procedure Act (APA) is made applicable to black lung proceedings through the Longshoremen's and Harbor Workers' Compensation Act. Bethlehem Mines Corp. v. Henderson, 939 F.2d 143, 148 (4th Cir.1991); see also 20 C.F.R. § 725.455(b) (applying 5 U.S.C. § 554 to black lung proceedings). In an administrative proceeding under the APA, "[w]hen an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary." 5 U.S.C. § 556(e); see also Union Elec. Co. v. FERC, 890 F.2d 1193, 1202 (D.C.Cir.1989).
 
 
 6
 Here, the ALJ took notice of undisputed facts. Maddaleni has never contended Pittsburg's physicians were not listed in the Directory, nor has he maintained he was not given a chance to rebut the facts noticed. Indeed, he concedes an ALJ may take administrative notice in black lung proceedings. See Petitioner's Opening Br. at 4. His only argument is that the ALJ disregarded the reports of his physicians because they were not listed in the Directory. Neither the ALJ's opinion nor the record support this assessment.
 
 
 7
 "The ALJ is not bound to accept the opinion or theory of any given physician, but may weigh the medical evidence and draw his own inferences." American Coal Co. v. Benefits Review Bd., 738 F.2d 387, 391 (10th Cir.1984). Here, the physicians' reports were conflicting. Consequently, it was incumbent upon the ALJ to make a determination based on his assessment of the credibility of the medical evidence. Because it was undisputed that Maddaleni presented sufficient evidence to invoke the interim presumption of disability,[3] the proceedings focused on whether Pittsburg presented sufficient evidence to rebut this presumption.
 
 
 8
 Maddaleni submitted current reports from two physicians, Drs. Van As and Phelps. Dr. Van As concluded Maddaleni's blood gas studies fell within the impairment guidelines. His report did not, however, provide an opinion as to the degree of impairment. Dr. Phelps did not perform any studies. He simply referred Maddaleni to Dr. Van As for further testing. In addition, Maddaleni submitted evidence from Dr. Keil, his treating physician. Dr. Keil's last examination of Maddaleni was in the late seventies. At that time, he noted probable emphysema and some evidence of restrictive disease but did not consider the symptoms severe. Dr. Keil did not elaborate on the extent of Maddaleni's physical limitations. Maddaleni did not submit any documents identifying the credentials or background of these physicians prior to the ALJ's consideration of the case on remand.
 
 
 9
 In contrast were the reports from Pittsburg's physicians. Dr. Scroggin examined Maddaleni in 1986. He conducted extensive testing, including blood gas studies, an x-ray, and spirometry. He concluded that given Maddaleni's age and the altitude at which the tests were taken, the results were in the normal range. He noted that although there was some evidence of asthma, he did not relate it to coal mining. His report included his opinion that Maddaleni could not return to coal work because of his age and history of heart problems. Dr. Petty, Pittsburg's second reporting physician, made similar findings when he examined Maddaleni in 1979.
 
 
 10
 Because of the extensive testing they conducted and their backgrounds in pulmonary medicine, the ALJ gave greater weight to the reports of Pittsburg's physicians. He concluded, based on all the medical evidence, that Maddaleni is not totally disabled as a result of his work in the coal mines. There is substantial evidence in the record to support that conclusion. Consequently, we AFFIRM the decision of the Benefits Review Board.
 
 
 
 *
 Honorable David Sam, District Judge, United States District Court for the District of Utah, sitting by designation
 
 
 [1]
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this Petition For Review. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument
 
 
 [2]
 The record does not reveal why it took so long for this claim to be adjudicated. The ALJ's original decision was filed in 1980. The decision remanding the case, however, was not filed until 1986. In any event, because this claim was filed prior to April 1, 1980, we apply the criteria found in 20 C.F.R. pt. 727. See Garcia v. Director, Office of Workers' Compensation Programs, 869 F.2d 1413, 1415 n. 6 (10th Cir.1989)
 
 
 [3]
 In the case of a living miner, this presumption is met if the claimant worked as a coal miner for at least ten years, and he meets any one of the following medical requirements: 1) an x-ray or biopsy establishes the existence of pneumoconiosis, 2) ventilatory test results fall below certain numbers described in the regulations, 3) blood gas test results fall below certain numbers, or 4) other medical evidence establishes the presence of a totally disabling respiratory or pulmonary impairment. See 20 C.F.R. § 727.203(a)(1)-(4)