**AMERICAN COAL COMPANY and Energy Mutual Insurance Company, Petitioners,**

v.

**BENEFITS REVIEW BOARD, UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 82–1432.

United States Court of Appeals, Tenth Circuit.

July 6, 1984.

David Lloyd, Salt Lake City, Utah, for petitioners.

Troy B. Smith, Atty., U.S. Dept. of Labor, Washington, D.C. (T. Timothy Ryan, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., J. Michael O'Neill, Asst. Counsel, Washington, D.C., for Black Lung Benefits, and Bonnie J. Brownell, Atty., U.S. Dept. of Labor, Washington, D.C., on brief), for respondent.

Before SETH, Chief Judge, and HOLLOWAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

The American Coal Company (employer) has appealed an award of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945, to claimant Jack Callor. The issues on appeal are whether the Benefits Review Board erred in upholding the administrative law judge's (ALJ) decision construing the effect of the presumption under 20 C.F.R. § 727.203(a) and whether the Board erred in refusing to join Peabody Coal Company as the party who would be primarily liable to claimant.

After considering documentary evidence and oral testimony, the ALJ awarded claimant black lung benefits payable by American Coal Company. The ALJ found that claimant's evidence invoked the presumption of total disability due to pneumoconiosis arising out of coal mine employment, 20 C.F.R. § 727.203(a), and stated that the resolution of the case "thus focuses on whether the presumption has been rebutted under § 727.203(b)." [1] The ALJ evaluated the extensive testimony of the employer's expert, Theodore Noehren, M.D., along with other medical evidence contained in claimant's file. The ALJ held that the rebuttal evidence offered to establish that claimant suffered from heart rather than lung disease was inconclusive and that claimant was therefore entitled to receive benefits.

The employer appealed the ALJ's decision to the Benefits Review Board. The employer argued that the ALJ erred by

---

1. 20 C.F.R. § 727.203 sets forth a rebuttable presumption. Subparagraph (a) provides that the miner will be presumed totally disabled from pneumoconiosis arising out of coal mine employment if the miner establishes ten years of coal mine employment and produces: (1) an x-ray, biopsy, or autopsy establishing pneumoconiosis; (2) ventilatory function test results that meet table values; (3) arterial blood gas test results that meet table values; (4) other medical evidence including doctors' reports that establish the presence of a totally disabling respiratory or pulmonary impairment; or (5) in the case of a survivor's claim when there is no

medical evidence, the testimony of the miner's family and other persons establishing the existence of a totally disabling respiratory impairment.

The presumption may be rebutted pursuant to paragraph (b) by showing: (1) that the miner is doing either the miner's normal coal mine work or comparable gainful work; (2) that the miner is able to do his usual coal mine work or comparable gainful work; (3) that the total disability of the miner did not arise in whole or in part out of coal mine employment; or (4) that the miner does not have pneumoconiosis.

construing the presumption under 20 C.F.R. § 727.203(a) as shifting the burden of persuasion rather than shifting the burden of producing contrary evidence. The employer also appealed the ALJ's denial of the employer's motion to add Peabody Coal Company as the party primarily liable. The Benefits Review Board affirmed the ALJ's decision. The instant appeal followed.

I

Claimant Callor worked approximately twenty-four years in the coal mining industry, working underground for more than fifteen of those years. Between January 1970 and his retirement in August 1979 claimant worked at a mine that was operated by Peabody Coal Company until January 1977 and then by American Coal Company. Between 1970 and 1975 claimant spent all but one year in underground mining. In December 1974 claimant began to serve as a training instructor. That position also required that he spend some time in the mine. From July 1977 until his retirement in August 1979 he served as a training coordinator.

The medical evidence in this case consists of a lung tissue biopsy, two chest x-ray reports, a blood gas study, four ventilatory function test reports, written reports and opinions of P.R. Cutler, M.D., and a report and testimony of Theodore H. Noehren, M.D. Claimant's x-ray reports and ventilatory function test reports triggered the presumption of claimant's total disability due to pneumoconiosis under 20 C.F.R. § 727.203(a). The ALJ found as facts that:

> "(1) An x-ray establishes the existence of pneumoconiosis. Claimant's exhibit 1 is a roentgenographic interpretation by Dr. E.N. Sargent, a 'B' reader, dated December 27, 1978, of an x-ray taken January 12, 1978. Dr. Sargent finds small opacities—rounded-type 'p', category 1/1 in all lung zones. This is sufficient to trigger the presumption under 20 C.F.R. § 410.428(a) which is incorporated by reference in § 727.203(a).

> (2) Ventilatory studies establish the presence of a chronic respiratory or pulmonary disease.

> The values shown in claimant's exhibit 2 (a study dated January 19, 1979) show an $FEV_1$ of 2.05 liter per second, which is below the 2.6 specified in § 727.203(a)(2), and a MVV of 61.3 which is below the 104 specified in the regulation. In a study interpreted by Dr. Noehren, dated June 20, 1979, the corresponding values are $FEV_1$ 1.167 before and 2.084 after bronchodilator and MVV 56 before and 62 after bronchodilator, which are likewise below the regulatory criteria."

R.I, 40.

Dr. Noehren, an expert witness for the employer, is a nationally recognized pulmonary specialist. Dr. Noehren conducted a complete pulmonary examination of claimant and testified that he did not think claimant had a disabling lung disease associated with long-term exposure to coal dust. Rather, he stated that he would concur with claimant's treating physician's report that claimant had symptoms more commonly associated with arteriosclerotic heart disease. Dr. Noehren found it significant that claimant was currently being treated and taking medication for heart disease and not pulmonary disease and that claimant's lungs were actually functioning adequately because there was enough oxygen flow to the bloodstream both at rest and after exercise. Dr. Noehren found a lack of focal emphysema and silicosis in the biopsy of lung tissue and said that claimant's bronchitis symptoms were probably not caused by coal mining.

Nonetheless, Dr. Noehren acknowledged that claimant's clinical history supports a finding of either pulmonary or cardiac problems. Dr. Noehren stated that from the evidence available to him he could not definitively diagnose a heart condition. Dr. Noehren stated that he thought tobacco bronchitis was one of claimant's problems, but he stated later that he couldn't give a definitive determination of the cause of bronchitis, especially when the patient has

not smoked for several years. (Claimant quit smoking about 1968.)

Dr. Noehren stated that he based his opinion that claimant does not have a disabling lung impairment mostly on the normal blood gas test results. However, Dr. Noehren also testified that both blood gas and ventilatory function tests are useful to measure lung functions and that occupational history is one of the most important factors in evaluating chest diseases. Dr. Noehren stated that this case exemplifies that a difficult, if not impossible, question for a pulmonary physician is whether the cause of certain disabilities is the lungs or the heart.

Claimant testified that coughing and other breathing problems interfered with his ability to work. He stated that he had discussed these problems with his superiors and retired because he was unable to perform his duties. During the two months before his retirement, claimant missed eighteen days of work because of sickness. Wilfred LaVon Day, claimant's former supervisor, testified that he did not know why claimant retired but that on several occasions claimant indicated he could not keep up the pace.

## II

The employer contends that Fed.R.Evid. 301 controls the operation of the presumptions in this case. It bases its argument on *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976), in which the Court stated,

"Turning our attention to the statutory regulations of proof of § 402(f) disability, we focus initially on the Operators' challenge to the presumptions contained in §§ 411(c)(1) and (2). Section 411(c)(1) provides that a coal miner with 10 years' employment in the mines who suffers from pneumoconiosis will be presumed to have contracted the disease from his employment. Section 411(c)(2) provides that if a coal miner with ten years' employment in the mines dies from a respiratory disease, his death will be presumed to have been due to pneumoconiosis. Each

presumption is explicitly rebuttable, and the effect of each is simply to shift the burden of going forward with evidence from the claimant to the operator. See Fed.Rule Evid. 301."

*Id.* at 27, 96 S.Ct. at 2898 (footnotes omitted).

■ We believe that defendant misinterprets the Supreme Court's reference to Fed.R.Evid. 301 and that the Federal Rules of Evidence are inapplicable to the adjudication of this case. First, the Federal Rules of Evidence by their express terms apply only to proceedings in the federal courts and before U.S. Magistrates. Fed.R.Evid. 101, 1101. They are not intended to apply to administrative hearings such as those held under the Black Lung Benefits Act.

Second, Rule 301 applies only to "civil actions and proceedings not otherwise provided for by Act of Congress or by these rules...." The Black Lung Benefits Act, 30 U.S.C. § 932(a), incorporates by reference section 23(a) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 923(a), which precludes mandatory application of "common law or statutory rules of evidence or ... technical or formal rules of procedure" in adjudicating claims within the federal administrative process.

Third, Congress has also otherwise provided for interpretation of presumptions under the Black Lung Benefits Act by delegating to the Secretary of Labor the authority to create presumptions with limited rebuttal methods. The Act, in 30 U.S.C. § 902(f)(1), delegates to the Secretary the authority to define by regulation "total disability," with the proviso that the criteria applied to adjudicate claims such as the one before us under § 435 of the act, 30 U.S.C. § 945, shall not be more restrictive than the criteria applicable to adjudication of claims filed on June 30, 1973. *Id.* at § 902(f)(2). In carrying out his responsibilities, the Secretary of Labor promulgated the "interim presumption" regulation, 20 C.F.R. § 727.203, which expressly delineates the methods of rebuttal.

Finally, we note that the Supreme Court's reference to Rule 301 in *Usery v. Turner Elkhorn Mining Company* appears in a discussion expressly limited to consideration of 30 U.S.C. §§ 921(c)(1) and (2). Neither of these presumptions is at issue here, and neither limits the methods of rebuttal available to an employer.

### III

█ In reviewing the decision of the Benefits Review Board, we must determine if the Board correctly found that the ALJ's decision was supported by substantial evidence. *Peabody Coal Co. v. Benefits Review Board,* 560 F.2d 797, 799 (7th Cir. 1977). The substantial evidence rule requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). The ALJ is not bound to accept the opinion or theory of any given physician, but may weigh the medical evidence and draw his own inferences. We may not set aside an inference because we find the opposite one more reasonable or because we question its factual basis. *Peabody Coal,* 560 F.2d at 802.

█ In the case at bar, the ALJ's finding of total disability from pneumoconiosis was based on substantial evidence. The x-ray and ventilatory function studies invoked the presumption, which may be rebutted only by a showing, considering "all relevant medical evidence," that:

"(1) The evidence establishes that the individual is, in fact, doing his usual coal mine work or comparable and gainful work; or

(2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work; or

(3) The evidence establishes that the total disability or death of the miner did not arise in whole or in part out of coal mine employment; or

(4) The evidence establishes that the miner does not, or did not, have pneumoconiosis."

20 C.F.R. § 727.203(b) (citations omitted). Because the evidence in this case conclusively established that claimant has pneumoconiosis, is not now employed, and has a substantial disability, the employer must attempt a method three rebuttal. To do so it asserts that the cause of the disability is arteriosclerotic difficulties and not disabling pneumoconiosis arising out of coal mine employment.

The only diseases that Doctors Cutler and Noehren actually diagnosed are lung diseases. Both doctors speculated as to the existence of a heart disease, but Dr. Noehren stated that it is virtually impossible to distinguish between heart and lung disease in the instant case. Finally, Dr. Noehren's report found a respiratory impairment from emphysema and bronchitis, which he was unable to say was unrelated to claimant's coal mine employment.

Dr. Noehren's testimony, together with other medical evidence, is inconclusive as to the cause of claimant's disability. The ALJ found that Dr. Noehren's evidence established only that "it is likely that claimant suffers both from lung disease and from heart disease...." The medical evidence presented is insufficient to establish that the ALJ was clearly wrong in finding that claimant's disability arose out of coal mine employment. *See Hampton v. United States Department of Labor Benefits Review Board,* 678 F.2d 506, 508 (4th Cir. 1982) (per curiam); *Rose v. Clinchfield Coal Co.,* 614 F.2d 936, 939 (4th Cir.1980).

### IV

█ The employer contends that the Board erred in affirming the ALJ's refusal to grant its motion to add Peabody Coal Company as a party to the instant proceeding. The ALJ denied the employer's motion because it was not timely. "An administrative law judge may consider a new issue only if such issue was not reasonably ascertainable by the parties at the time the claim was before the deputy commission-

er." 20 C.F.R. § 725.463(b). The ALJ has discretion to refuse to consider a new issue, *id.*, and he wished to avoid protracted delays in adjudicating this claim. We agree with the Board that the question of Peabody's primary liability was reasonably ascertainable when the employer first learned of the claim. Therefore, the employer waived the issue for purposes of the present proceeding. The Benefits Review Board acted properly in affirming the ALJ's refusal to join Peabody Coal Company.

AFFIRMED.