836 F.2d 550
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clay JACKSON, Petitioner,
v.
BENEFITS REVIEW BOARD, Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondent.
 No. 86-3646.
 United States Court of Appeals, Sixth Circuit.
 Dec. 24, 1987.
 
 Before MILBURN, Circuit Judge, WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Clay W. Jackson appeals from a decision of the Benefits Review Board ("Board") affirming the determination by the Administrative Law Judge ("ALJ") denying him benefits under the Black Lung Benefits Act ("Act"), 30 U.S.C. Sec. 901 et seq. (1982). Jackson contends on appeal that the ALJ erred in concluding that the interim presumption of total disability due to pneumoconiosis, 20 C.F.R. Sec. 727.203(a), had been rebutted under 20 C.F.R. Sec. 727.203(b)(2) as the record is devoid of evidence that he can return to his usual coal mine employment. For the following reasons, we affirm the decision of the Board.
 
 I.
 
 2
 On December 21, 1977, Jackson filed a claim for black lung benefits under Part C of the Act with the Department of Labor.[1] In March of 1981, the Department of Labor denied the claim, and, in accordance with the Act, referred the matter to the Office of Administrative Law Judges. Jackson requested a formal hearing before an ALJ, and a hearing was held on June 28, 1983.
 
 
 3
 The evidence at the hearing disclosed that Jackson was born on October 15, 1915, and attained a seventh grade education in which he learned to read and write but not add or subtract. The evidence further indicated that Jackson worked as a shuttle-car operator in the coal mine for twenty-nine years ending in 1977 due to his having difficulty breathing and walking out of the mine.
 
 
 4
 The medical evidence presented at the hearing consisted of the reports of several physicians. Dr. Herbert F. White evaluated Jackson on April 3, 1978, and diagnosed Jackson as having coal workers' pneumoconiosis-category O[2] and pulmonary emphysema. He opined that Jackson's condition was related to dust exposure in his coal mine employment and that, due to his impairments, Jackson could not lift more than fifty pounds or climb or walk rapidly. Dr. William K. Swann examined Jackson on April 29, 1980, and reported that pulmonary ventilatory studies conducted on Jackson were within the normal range. Dr. A.R. Hudson evaluated Jackson on September 29, 1980. He reported, on the basis of a history, physical examination, pulmonary function study, blood gas test, and chest x-ray, that, "Although the present data [does] not indicate that the patient has any pulmonary disability, I suspect that he has a mild impairment because of the finding of emphysema on the chest x-ray." Dr. Hudson's report continued that Jackson's pulmonary impairment is unrelated to his coal mine exposure but instead due to his cigarette smoking. Finally, Jackson's treating physician, Dr. William K. Rogers, reported in a letter dated April 26, 1981, that:
 
 
 5
 As you well know, I have so stated on September 5, 1979, that I felt Mr. Jackson did show x-ray evidence of coal workers' pneumoconiosis, but that he did not have a physical disability and that he was disabled by the fact that his pneumoconiosis was beyond category I and I advised no further exposure. This does not mean that he could not work at another job, but on the basis of my observation, I felt that he should no longer work in the coal mines.
 
 
 6
 In a subsequent letter, dated December 14, 1981, Dr. Rogers indicated that he examined Jackson on April 20, 1981, and that a chest x-ray still evidenced coal workers' pneumoconiosis. He added that Jackson's lung fields were entirely clear to percussion and auscultation, but that he performed no physiciological studies on Jackson during the examination. In a letter dated May 19, 1983, Dr. Rogers indicated that he examined Jackson on February 25, 1983 and that Jackson's lung fields were clear without wheeze or rales. He added that although Jackson's x-rays evidenced pneumoconiosis, he performed no pulmonary function tests on Jackson as he was unaware Jackson was still pursuing his black lung claim.
 
 
 7
 On the basis of the evidence presented, the ALJ found, on May 31, 1984, that the x-ray evidence invoked the interim presumption of 20 C.F.R. Sec. 727.203(a)(1) that Jackson was totally disabled due to pneumoconiosis arising from coal mine employment. The ALJ further found that such presumption was rebutted under 20 C.F.R. Sec. 727.203(b)(2) in that, in light of all the relevant evidence, Jackson was still able to do his usual coal mine work or comparable employment. The ALJ, accordingly, denied Jackson's claim for black lung benefits.
 
 
 8
 Jackson appealed the ALJ's denial to the Board, and, on June 18, 1986, the Board affirmed the ALJ's decision as supported by substantial evidence. On July 10, 1986, Jackson timely filed this petition for review.
 
 II.
 
 9
 On appeal, Jackson asserts that the Board erred in upholding the ALJ's denial of benefits as the ALJ's decision is not supported by substantial evidence. Specifically, Jackson contends that the ALJ erred in determining that rebuttal under 20 C.F.R. Sec. 727.203(b)(2) had been achieved: (1) when no vocational evidence had been introduced to determine his ability to do comparable and gainful work; and (2) when no evidence had been introduced outlining the physical demands of a shuttle-car operator.
 
 
 10
 This court's review of a decision of the Benefits Review Board is limited. Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983). "The court of appeals scrutinizes Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Bumble Bee Seafoods v. Director, OWCP, 629 F.2d 1327, 1329 (9th Cir.1980). The Board's function is similarly limited in scope. It may not review an ALJ's decision de novo. Instead, it is limited to reviewing the ALJ's decision for errors of law and to determine whether the factual findings are supported by substantial evidence in the record as a whole. Rowe, 710 F.2d at 254; 33 U.S.C. Sec. 921(b)(3); 20 C.F.R. Sec. 802.301. Thus, the question for this court is whether the Board was correct in determining that the ALJ's decision was supported by "substantial evidence." "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 11
 Under the statutory scheme of the Black Lung Benefits Act, a miner may establish an interim, rebuttable presumption of pneumoconiosis if he produces any one of the following four medical requirements:
 
 
 12
 1. A positive chest x-ray which establishes pneumoconiosis;
 
 
 13
 2. Ventilatory or breathing function studies where the test results fall below certain regulatory standards;
 
 
 14
 3. Blood gas studies, showing an impairment of oxygen transfer from the lungs to the bloodstream within certain regulatory standards;
 
 
 15
 4. Other medical evidence, including the documented opinion of a physician exercising reasoned medical judgment.
 
 
 16
 20 C.F.R. Sec. 727.203(a).
 
 
 17
 Once the presumption is established, a miner is presumed to be totally disabled by pneumoconiosis due to coal dust exposure. Id. The burden then shifts to the opposing party to rebut the presumption by any one of four methods found in 20 C.F.R. Sec. 727.203(b). The method relevant to this case provides:
 
 
 18
 "The presumption in paragraph (a) of this section shall be rebutted if:
 
 
 19
 (2) In light of all relevant evidence it is established that the individual is able to do his usual coal mine work or comparable and gainful work (see Sec. 410.412(a)(1) of this title)."
 
 
 20
 20 C.F.R. Sec. 727.203(b)(2).
 
 
 21
 This court has interpreted 20 C.F.R. Sec. 727.203(b)(2) to mean that the interim presumption of total disability may be rebutted by a showing that the claimant is able to perform his usual coal mine work or that he can perform other comparable and gainful work. Adams v. Peabody Coal Co., 816 F.2d 1116, 1118 (6th Cir.1987) (per curiam); Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 730 (6th Cir.1985) (per curiam). An ALJ must consider vocational factors, such as age, education, and work experience, in determining that the claimant is capable of performing comparable and gainful work by virtue of the reference to 20 C.F.R. Sec. 410.412(a)(1) following the "comparable and gainful work" language of 20 C.F.R. Sec. 727.203(b)(2). Section 410.412(a)(1), in turn, references 20 C.F.R. Sec. 410.424-410.426 for a definition of "comparable and gainful work". Section 410.412(a)(1) provides that pneumonoconiosis shall be found to be totally disabling when a miner's chronic respiratory or pulmonary impairment prevent him not only from engaging in his work as a coal miner but also, considering his age, education, and work experience, prevent him from engaging in comparable and gainful employment. See Kolesar, 760 F.2d at 730.
 
 
 22
 An ALJ, however, need not consider such vocational factors in determining that the claimant is capable of performing his usual coal mine work. Adams, 816 F.2d at 1118; Kolesar, 760 F.2d at 730; Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485, 488-90. Rather, this prong of 20 C.F.R. Sec. 727.203(b)(2) is strictly a medical test and may be achieved by showing that the claimant is capable of performing his usual coal mine work. Adams, 816 F.2d at 1118.
 
 
 23
 In light of the foregoing, Jackson's first contention on appeal must fail. In determining that Jackson's interim presumption had been rebutted under section 727.203(b)(2), the ALJ found that Jackson was capable of performing his usual coal mine employment. Since vocational evidence is not necessary when rebutting the presumption under the "usual coal mine employment prong" of section 727.203(b)(2), the ALJ did not err in concluding that the presumption had been rebutted without the introduction of vocational evidence. The fact that the ALJ added that Jackson could perform comparable and gainful employment is of no monent here because each prong of section 727.203(b)(2) is sufficient, in and of itself, to rebut the interim presumption of total disability and the decisions of both the ALJ and the Board clearly indicate reliance on the "usual coal mine employment" prong.
 
 
 24
 In light of the foregoing, Jackson's second contention on appeal must fail as well. Jackson cites this court to no authority for his proposition that before an ALJ can find an interim presumption of total disability rebutted under the "usual coal mine" employment prong of 20 C.F.R. Sec. 727.203(b)(2), the opposing party must have presented evidence of the physical demands of the claimant's usual coal mine employment. The regulations, in fact, do not specifically require such evidence and direct only that when "[i]n light of all the evidence it is established that the individual is able to do his usual coal mine work," rebuttal has been achieved. As discussed above, this court has stated that the determination of whether a claimant can perform his usual coal mine employment is strictly a medical test and it need only be determined that the medical evidence substantiates the claimant's ability to perform his usual coal mine employment. Adams, 816 F.2d at 1118. Additionally, this court has held that it is the role of the ALJ to determine the credibility of witnesses and evaluate the conflicting medical evidence. Mosely v. Peabody Coal Co., 769 F.2d 357, 360 (6th Cir.1985). An ALJ is not bound to accept the opinion or theory of any particular physician. He may, instead, weigh the medical evidence and draw his own inferences. American Coal Co. v. Benefits Review Bd., United States Dep't of Labor, 738 F.2d 387, 391 (10th Cir.1984). A reviewing court may not set aside an inference because it finds another more reasonable. Mosely, 769 F.2d at 360.
 
 
 25
 We find that substantial evidence supports the ALJ's determination that rebuttal had been achieved under the usual coal mine employment prong of subsection (b)(2) because the medical evidence substantiates Jackson's ability to perform his usual coal mine work as a shuttle-car operator. Dr. Swann determined that Jackson's pulmonary test results were all normal. Dr. Hudson diagnosed Jackson as having no pulmonary disability and attributed Jackson's mild impairment to a finding of emphysema on a chest x-ray. Dr. White opined that Jackson's slight to moderate impairment would prevent him from lifting more than fifty pounds and from walking and climbing rapidly. The ALJ specifically addressed these limitations as not being inconsistent with Jackson's ability to operate a shuttle-car at the mines. Additionally, although the evidence indicates that Jackson quit work because he had difficulty walking out of the mine, Dr. White's report placed no limitation in the distance Jackson could walk and merely stated that he could not be expected to walk to climb rapidly. Lastly, Jackson's treating physician, Dr. Rogers, found that Jackson had no physical disability that would prevent him from working even though Dr. Rogers did advise against further coal dust exposure.[3] Since substantial medical evidence supports the ALJ's finding that Jackson could perform his usual coal mine employment, the ALJ did not err in concluding that the interim presumption had been rebutted.
 
 
 26
 Accordingly, the Board's denial of black lung benefits is AFFIRMED.
 
 
 
 [1]
 On April 20, 1970, Jackson filed a claim for black lung benefits under Part B of the Act with the Social Security Administration. That claim was dismissed on May 10, 1976
 
 
 [2]
 Simple pneumoconiosis, which is caused by dust alone, is classified into categories 1, 2, and 3 according to the profusion of small rounded opacities in the lung fields visible on an x-ray, with category 1 indicating the least profuse and category 3 indicating very profuse. When the number of small opacities is insufficient for a diagnosis of category 1, category O is used. Drummond Coal Co. v. Freeman, 733 F.2d 1523, 1525, n. 3 (11th Cir.1984)
 
 
 [3]
 A physician's recommendation that exposure to coal dust should be avoided cannot be used to defeat rebuttal under section 727.203(b)(2). Coleman v. Kentland Elkhorn Coal Co., 5 BLR 1-260 (1982)