848 F.2d 668
 The EARL PATTON COAL COMPANY c/o Tennessee Consolidated Coal
Company, Petitioner,
v.
Edna PATTON, Widow of Earl Patton; Director, Office of
Workers' Compensation Programs, United States
Department of Labor, Respondents.
 No. 86-4089.
 United States Court of Appeals,
Sixth Circuit.
 Argued Nov. 10, 1987.
Decided March 29, 1988.
 
 Ronald E. Gilbertson, argued, Kilcullen, Wilson & Kilcullen, Washington, D.C., for petitioner.
 Thomas Holzman, Jeffrey J. Bernstein, DOWCP, Office of the Solicitor, U.S. Dept. of Labor, Benefits Review Bd., U.S. Dept. of Labor, Barbara J. Johnson, Carol De Deo, Office of the Solicitor, SASCL Div., Nathaniel I. Spiller, argued, for respondents.
 Before ENGEL,* MERRITT and NORRIS, Circuit Judges.
 ALAN E. NORRIS, Circuit Judge.
 
 
 1
 Petitioner, The Earl Patton Coal Company ("Patton Coal"), seeks review of an order of the Benefits Review Board ("the Board"), which affirmed separate decisions of two Administrative Law Judges. The first decision found that Edna Patton, widow of Earl Patton, was entitled to benefits under the Black Lung Benefits Act, 30 U.S.C. Secs. 901-945 ("the Act"). The second decision found that Patton Coal was the operator and the party responsible for payment of the benefits but that, under 20 C.F.R. Sec. 725.496(f), the liability for benefits was not transferable under 30 U.S.C. Sec. 932(j) from Patton Coal to the Black Lung Disability Trust Fund ("Trust Fund") established under 26 U.S.C. Sec. 9501.
 
 
 2
 This court must affirm the Board's decision if it is supported by substantial evidence and if it is in accordance with applicable law. Kolesar v. Youghiogheny & Ohio Coal Co., 760 F.2d 728, 729 (6th Cir.1985). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).
 
 I. BACKGROUND
 
 3
 Earl Patton was born on June 4, 1913, married Edna Patton on January 19, 1937, and remained married to her until his death on July 9, 1977. Edna Patton filed a claim for benefits with the Department of Labor on August 16, 1977. Her claim is subject to those provisions of Part C of the Act that apply to claims filed on or after July 1, 1973, but prior to April 1, 1980.[1]
 
 
 4
 The Board affirmed the A.L.J.'s finding that Edna Patton was entitled to benefits (beginning in July 1977, the month of Earl Patton's death) under the presumption established by 30 U.S.C. Sec. 921(c)(5), which applies to eligible survivors of a miner who died on or before March 1, 1978, and who was employed for twenty-five years or more in coal mines prior to June 30, 1971. Eligible survivors, if they filed claims prior to April 1, 1980, are entitled to benefits unless it is established that the miner was not partially or totally disabled due to pneumoconiosis at the time of his or her death.[2] The evidence is clear that Earl Patton was not totally disabled; however, the Board affirmed the A.L.J.'s finding that Patton Coal had failed to rebut the presumption with respect to partial disability.
 
 
 5
 On October 13, 1970, Earl Patton filed with the Social Security Administration ("S.S.A.") his own claim for benefits under Part B of the Act. 30 U.S.C. Secs. 921-925. Part B claims are those claims filed prior to July 1, 1973.[3] That claim, which is not before this court, alleged total disability due to pneumoconiosis. The S.S.A. denied the claim on February 8, 1971 and July 19, 1971. The claim was later reviewed by the S.S.A. under the Black Lung Benefits Act of 1972, Pub.L. 92-303, 86 Stat. 150 (1972) (codified as amended at 30 U.S.C. Secs. 901, 902, 921-924, 931-934, 936-940, 951 (1982)), and again denied on March 4, 1974. Earl Patton died on July 9, 1977.
 
 
 6
 After the passage of the Black Lung Benefits Reform Act of 1977, Pub.L. 95-239, 92 Stat. 95 (1978) (codified as amended in scattered sections of 26, 29, and 30 U.S.C.) ("1977 Amendments"), which enacted more lenient standards of eligibility, the S.S.A. sent Edna Patton an election card asking whether she wished her late husband's claim to be reviewed again. See 30 U.S.C. Sec. 945(a)(1)(A)-(B). As the surviving spouse of Earl Patton, she was entitled under the regulations to pursue his unpaid Part B claim on behalf of his estate by seeking review either by the S.S.A. or the Department of Labor. 20 C.F.R. Secs. 725.545(c)-(d), 410.704(b), 410.570(c). On March 30, 1978, she requested further review by the S.S.A. On April 13, 1979, the S.S.A. again denied Earl Patton's claim and, as required by the regulations, advised Edna Patton that the claim was being forwarded to the Department of Labor where it would be considered as a new claim for benefits and that she would be entitled to present additional evidence.
 
 
 7
 The Department of Labor referred the claim to the Office of Workers' Compensation Programs ("O.W.C.P.") for review. According to the Director's brief, the O.W.C.P., on February 26, 1987 (after the decision of the Board and the filing of this appeal), issued an initial finding and again denied this successorship claim on the basis that the evidence failed to show total disability due to pneumoconiosis at the time of Earl Patton's death.
 
 
 8
 At this time, then, Earl Patton's Part B claim for benefits, to which he might have been entitled prior to his death, has been denied because substantial evidence did not show either that he was totally disabled due to pneumoconiosis prior to his death, or that his death was due to pneumoconiosis. Had it been approved, liability would have been transferred to the Trust Fund. However, Edna Patton's Part C survivor's claim for benefits payable after her husband's death has been allowed because Patton Coal has failed to rebut the section 921(c)(5) presumption that he was partially disabled at the time of his death due to pneumoconiosis. The Board has refused to order that Patton Coal's liability for survivor's benefits be transferred to the Trust Fund.
 
 II. ISSUES
 
 9
 Patton Coal raises three issues in this appeal.
 
 
 10
 First, it argues that, if Edna Patton is entitled to benefits, liability for payment is required to be transferred to the Black Lung Trust Fund under Section 205 (30 U.S.C. Sec. 932(c)) of the Black Lung Benefits Amendments of 1981, Pub.L. 97-119, Title II, 95 Stat. 1643 (1981) (codified as amended at 30 U.S.C. Secs. 801, 901, 902, 921, 922, 923, 932, 940) ("1981 Amendments"). It contends that 20 C.F.R. Sec. 725.309(c) requires merger of the two claims, and that 20 C.F.R. Sec. 725.496(f), which the Board relied upon in denying transfer of liability, is invalid.
 
 
 11
 Second, Patton Coal argues that Edna Patton is not entitled to invoke the section 921(c)(5) presumption because she has not established by a preponderance of the evidence that her husband had been employed in the coal mines for twenty-five years.
 
 
 12
 Finally, it contends that the evidence in the record establishes rebuttal of the presumption.
 
 III. TRANSFER OF LIABILITY FOR BENEFITS
 
 13
 Under 30 U.S.C. Sec. 932(c), as amended by the 1981 Amendments,[4] an operator cannot be held responsible for payment of black lung benefits on account of death or total disability due to pneumoconiosis where the claim was denied before March 1, 1978, but then, after that date, was reviewed pursuant to 30 U.S.C. Sec. 945, and approved.[5] Liability for such claims is transferred under 30 U.S.C. Sec. 932(j)[6] to the Trust Fund.[7]
 
 
 14
 The Director and Patton Coal are in agreement that Earl Patton's Part B claim is a "claim denied before March 1, 1978" under the definition in 30 U.S.C. Sec. 902(i), thus meeting the threshold requirement for transfer of liability, but disagree with respect to the second requirement, that the claim be approved thereafter.
 
 Application of 20 C.F.R. Sec. 725.309(c)
 
 15
 Patton Coal contends that the approval of Edna Patton's Part C claim fulfills the second requirement because, in practical reality, there is only one claim being made--that Earl Patton was disabled due to pneumoconiosis. It argues that the first sentence of 20 C.F.R. Sec. 725.309(c) requires the two claims be merged:
 
 
 16
 A claimant who filed a claim for benefits under Part B of title IV of the Act or Part C of title IV of the Act before March 1, 1978, and whose previous claim(s) are pending or have been finally denied, who files an additional claim under this part, shall have the later claim merged with any earlier claim subject to review under Part 727 of this subchapter.
 
 
 17
 That regulation must be read with substantially similar provisions included in 20 C.F.R. Secs. 410.705(c) and 727.103(c). These three companion regulations require the merger and processing of certain multiple claims filed with the Secretary of Labor by the same claimant. A careful reading of the regulations indicate that they do not cover separate claims filed on behalf of the miner's estate and by an eligible survivor in her own right and on her own behalf. The regulations cannot be read as requiring the merging of such claims because the standards of proof and the procedures for processing the claims are different.
 
 
 18
 The reasoning of Patton Coal would have the ultimate effect of making the allowance or denial of the two claims dependent upon which claim is first decided--a result that would render meaningless the partial disability standard of 30 U.S.C. Sec. 921(c)(5). Further, it would have the effect of automatically transferring liability for paying survivors' claims to the Trust Fund in a number of cases not mentioned in the applicable legislative history, thus resulting in an increase in Trust Fund liabilities not intended by Congress.
 
 
 19
 The three regulations have the same title: "Duplicate Claims." The purpose for promulgating them is stated in the legislative history: "The conferees also expect the Secretaries of HEW and Labor to establish a satisfactory mechanism to coordinate their responsibilities and to avoid both agencies simultaneously reviewing the claim of any claimant previously denied under part B and later denied, pending, or entitled under part C." H.R. Conf. Rep. No. 864, 95th Cong., 2d Sess. 15, 21-22, reprinted in 1978 U.S.Code Cong. & Admin. News 237, 308, 314, 315. The three regulations clearly preclude duplicate consideration of claims, and recognize a claimant's statutory right to select review by either the S.S.A. or the Department of Labor. They are purely procedural and do not affect substantive rights. They do not address the situation where two related claimants, as here, file claims relating to the same miner's employment. Certainly, they were not intended to expand or restrict the law and regulations applicable to the liability of the Trust Fund.
 
 
 20
 The survivor's claim of Edna Patton was a Part C claim predicated upon partial disability which was pending on March 1, 1978, and was considered in the first instance pursuant to 30 U.S.C. Sec. 945. As such, it is not within the language of the last clause of 30 U.S.C. Sec. 932(c). That clause exempts operators from the payment of benefits for claims based upon death or total disability due to pneumoconiosis, which were denied prior to March 1, 1978, and subsequently reviewed and approved under 30 U.S.C. Sec. 945. Further, her claim is not within the language of the provision which transfers responsibility for the payment of benefits to the Trust Fund, 30 U.S.C. Sec. 932(j)(3), which parallels the language of the clause in Sec. 932(c). Accordingly, no basis exists for holding that the fate of her claim is affected in any way by the fate of her husband's successorship claim.
 
 
 21
 Refusing to transfer liability upon a survivor's claim, where liability would have been transferred on the miner's claim, is not inconsistent with the intent of Congress. Legislative history shows that the transfer of liability provisions of the 1981 Amendments reflect a congressional intent to accommodate only a limited number of claims within estimated cost limitations. Although Congress repealed 30 U.S.C. Sec. 921(c)(5) and other extremely lenient provisions of the 1977 Amendments, the transfer provisions indicate that Congress did not intend that the Trust Fund assume all liabilities for benefits payable only because of the leniency of the now repealed standards. The Trust Fund is liable only for claims denied, either by the S.S.A. or the Department of Labor, prior to March 1, 1978 and approved thereafter. It is not liable for other claims pending on March 1, 1978, even though operators relying upon the 1972 version of the Act could not have anticipated that they would be held liable on those claims solely because of more lenient standards enacted by the 1977 Amendments. The statutory language, in referring to claims denied before and approved after March 1, 1978, makes no distinction between miners' and survivors' claims.IV. EVIDENCE RELEVANT TO THE SURVIVOR'S PRESUMPTION
 
 Twenty-five years' coal mine employment
 
 22
 Patton Coal first argues that Edna Patton was not entitled to the survivor's presumption because the evidence was insufficient to establish that her husband had been employed for twenty-five years in coal mines. The record includes statements both by Earl Patton and his former employer, Tennessee Consolidated Coal Company ("Tennessee Coal"), that he had been employed by that company from 1930 to 1961. The statements were made in 1970 when Earl Patton applied for black lung benefits for total disability. The statements are supported by testimony of Edna Patton and her son. Edna Patton testified that her husband had worked in the coal mines from the age of thirteen, except for a period of ten years between 1961 and 1971; her son testified that he worked side-by-side with his father in underground coal mining during 1971. That evidence is consistent with an itemized statement of earnings issued by the S.S.A. which shows wages subject to social security paid by Tennessee Coal during the period from the effective date of the Social Security Act in 1937 through 1942 and for parts of 1943 and 1946, self-employment earnings subject to the Social Security Act from 1951, when those earnings were first subject to the Social Security Act, until 1961, and self-employed earnings during 1971 and 1972.
 
 
 23
 Evidence offered in rebuttal of the survivor's presumption
 
 
 24
 Edna Patton established entitlement to benefits by virtue of the presumption created by 30 U.S.C. Sec. 921(c)(5), which is predicated upon partial disability. Under the regulations interpreting section 921(c)(5), a miner is considered to have been "partially disabled" if, at the time of his death, he had reduced ability to engage in his usual work or "comparable and gainful work." 20 C.F.R. Sec. 727.204(b). To rebut the presumption, the evidence must demonstrate either that the miner's ability to perform such work was not reduced at the time of his death, or that he did not have pneumoconiosis. 20 C.F.R. Sec. 727.204(c).
 
 
 25
 To invoke the survivor's presumption, all that needs to be shown is the requisite period of employment and the requisite date of death. The survivor's prima facie case of entitlement to benefits need not include proof that the miner suffered from pneumoconiosis. Once invoked, the burden of proof (production and persuasion) shifts to the employer or Director to establish that the miner was not partially or totally disabled due to pneumoconiosis at the time of his death. Further, even if the miner had pneumoconiosis and was partially disabled at the time of his death, the employer can establish that the cause of the disability was not the miner's pneumoconiosis. Begley v. Consolidation Coal Co., 826 F.2d 1512, 1513-15 (6th Cir.1987).
 
 
 26
 The A.L.J., after noting that the record did not contain any narrative medical reports addressing the question of whether Earl Patton had pneumoconiosis or whether he was partially disabled thereby, carefully considered the evidence in rebuttal: (1) that Earl Patton was employed by a coal mine as a supervisor on the date of his death; (2) that his level of earnings was increasing in the years prior to his death; (3) that two of his chest X-rays had been interpreted as negative for pneumoconiosis, and chest X-rays made when he was hospitalized for other health problems did not show pneumoconiosis; and (4) that his death certificate showed that he died from acute myocardial infarction due to arteriosclerotic heart disease.
 
 
 27
 Under 20 C.F.R. Sec. 727.204(d), one of those types of evidence, standing by itself, is not sufficient to rebut the presumption, but a conjunction of two or more of the four 204(d) types of evidence does tend to indicate the absence of reduced work ability and can suffice to defeat the presumption.[8] Nevertheless, the A.L.J. remains free to weigh the conflicting evidence and discount the probative effect of the rebuttal evidence. Begley, 826 F.2d at 1514.
 
 
 28
 The A.L.J. found (1) that Earl Patton's employment as a supervisor was due to the fact that he could not perform his usual work as a coal miner; (2) that his level of earnings had increased, not by reason of his performance of work as a coal miner but because he was president and owner of the company; (3) that the employer's evidence of other medical ailments did not rebut evidence that he was partially disabled by breathing problems, the evidence consisting of four qualifying X-ray reports and a progressing ventilation impairment shown by two nonqualifying pulmonary function studies; and (4) that the death certificate did not address the question of whether he suffered from ailments other than the malady that caused his death.
 
 
 29
 This court does not weigh the evidence or assess the credibility of witnesses. After a careful review of the entire record, we are unable to say that the decision of the Board, that Earl Patton was employed in the coal mines for a period of twenty-five years and that Patton Coal has failed to rebut the survivor's presumption, is not supported by substantial evidence or is not in accordance with applicable law. We therefore affirm those portions of the Board's decision and order.
 
 
 30
 For the reasons above stated, the order of the Benefits Review Board is affirmed.
 
 
 
 *
 The Honorable Albert J. Engel assumed the duties of Chief Judge effective April 1, 1988
 
 
 [1]
 "Part C" claims [30 U.S.C. Secs. 931-945] are those filed on or after July 1, 1973; they are paid by private employers or by a fund to which the employers contribute, and they are administered by the Director of the Office of Workers' Compensation Programs ... pursuant to regulations promulgated by the Secretary of Labor
 Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, --- U.S. ----, 108 S.Ct. 427, 429, 98 L.Ed.2d 450 (1987) (footnote omitted).
 
 
 [2]
 30 U.S.C. Sec. 921(c)(5) reads:
 In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30, 1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981.
 That effective date was January 1, 1982.
 
 
 [3]
 Part B claims "were processed by the Social Security Administration ... pursuant to regulations promulgated by the Secretary of the Department of Health, Education, and Welfare ... ; when allowed these 'Part B' claims were paid from federal funds." Mullins Coal Co. v. Director, Office of Workers' Compensation Programs, 108 S.Ct. at 429 (footnote omitted)
 
 
 [4]
 30 U.S.C. Sec. 932(c), as amended by the 1981 Amendments, reads:
 Benefits shall be paid during such period by each such operator under this section to the categories of persons entitled to benefits under section 922(a) of this title in accordance with the regulations of the Secretary applicable under this section: Provided, That, except as provided in subsection (i) of this section, no benefit shall be payable by any operator on account of death or total disability due to pneumoconiosis (1) which did not arise, at least in part, out of employment in a mine during a period after December 31, 1969 when it was operated by such operator; or (2) which was the subject of a claim denied before March 1, 1978, and which is or has been approved in accordance with the provisions of section 945 of this title.
 
 
 [5]
 30 U.S.C. Sec. 945 provides detailed procedures for review under the more lenient standards of the 1977 Amendments, of Part B claims that are either pending on March 1, 1978, or have been denied on or before that date
 
 
 [6]
 30 U.S.C. Sec. 932(j)(3) provides, in pertinent part, that "section 9501 of Title 26 shall govern the payment of benefits in cases ... in which there was a claim denied before March 1, 1978, and such claim is or has been approved in accordance with the provisions of section 945 of this title."
 
 
 [7]
 26 U.S.C. Sec. 9501(d)(7) provides, in pertinent part, that the Trust Fund shall be available, in addition to other purposes, for:
 (7) the reimbursement of operators and insurers for amounts paid by such operators and insurers (other than amounts paid as penalties, interest, or attorney fees) at any time in satisfaction (in whole or in part) of any claim denied (within the meaning of section 402(i) of the Black Lung Benefits Act) before March 1, 1978, and which is or has been approved in accordance with the provisions of section 435 of the Black Lung Benefits Act.
 
 
 [8]
 20 C.F.R. Sec. 727.204(d) reads:
 (d) The following evidence alone shall not be sufficient to rebut the presumption:
 (1) Evidence that a deceased miner was employed in a coal mine at the time of death;
 (2) Evidence pertaining to a deceased miner's level of earnings prior to death;
 (3) A chest X-ray interpreted as negative for the existence of pneumoconiosis;
 (4) A death certificate which makes no mention of pneumoconiosis.