962 F.2d 17
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Ruth Lucille HOTCHKISS, widow of Neal G. Hotchkiss, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 91-9542.
 United States Court of Appeals, Tenth Circuit.
 April 28, 1992.
 
 1
 Before EBEL and BARRETT, Circuit Judges, and KANE,* District Judge.
 
 
 2
 ORDER AND JUDGMENT**
 
 BARRETT, Circuit Judge
 
 3
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 4
 Petitioner Ruth Lucille Hotchkiss, widow of Neal G. Hotchkiss (the miner), petitions this court to review the decision of the Benefits Review Board upholding the administrative law judge (ALJ)'s denial of benefits to Petitioner under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. Petitioner argues that the ALJ failed to afford her the applicable presumptions under the Act and failed to adequately interpret and weigh certain evidence in her favor. We reject Petitioner's contentions and affirm.
 
 
 5
 The miner worked in coal mines from 1932 until 1954. He applied for benefits under the Act on November 28, 1972, May 18, 1978, and April 19, 1982. All three claims were denied.
 
 
 6
 After the miner's death on July 4, 1982, Petitioner wrote to the Department of Labor requesting advice as to whether certain documents would substantiate the miner's third claim. The Department responded that the evidence failed to substantiate that the miner's disability was related to his coal mine employment. Petitioner took no further action on any of the miner's claims. She filed her own survivor's claim in September 1986.
 
 
 7
 Benefits under the Act are provided to "eligible survivors of a miner whose death was due to pneumoconiosis." 20 C.F.R. § 718.205(a). For claims filed on or after January 1, 1982, death is considered to be due to pneumoconiosis if: 1) competent medical evidence establishes that death was due to pneumoconiosis; 2) pneumoconiosis was a substantially contributing cause or factor leading to death or the death was caused by complications of pneumoconiosis; or 3) the presumption in 20 C.F.R. § 718.304 applies. 20 C.F.R. § 718.205(c)(1)-(3). Survivors are not entitled to benefits where the miner's death was caused by a medical condition unrelated to pneumoconiosis "unless the evidence establishes that pneumoconiosis was a substantially contributing cause of death." 20 C.F.R. § 718.205(c)(4).
 
 
 8
 Pneumoconiosis is defined as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201. A disease "arising out of coal mine employment" includes "any chronic pulmonary disease resulting in respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." Id.
 
 
 9
 The ALJ found that the miner died of respiratory failure due to carcinoma of the lung, and not from pneumoconiosis. He relied on a statement in the death certificate, signed by Dr. Howard Ward, that the cause of death was respiratory failure due to carcinoma of the lung; a discharge summary dated three days after the miner's death signed by Dr. Ward and containing the same diagnosis; and a report by Dr. Timothy Kennedy dated January 5, 1987, that the miner's death was due to cancer, not coal miner's pneumoconiosis. The ALJ gave little weight to the opinion of Dr. Dwight Adams that Pneumoconiosis was a significant factor in the miner's death or to four affidavits submitted by individuals with no medical training. The ALJ further found that Petitioner had not established the irrebuttable presumption of death due to pneumoconiosis under 20 C.F.R. §§ 718.304(a), (b), or (c). He refused to apply the presumption of pneumoconiosis under 20 C.F.R. § 718.305 because the claim was filed after January 1, 1982. The Benefits Review Board affirmed.
 
 
 10
 We review the ALJ's decision to determine whether it is supported by substantial evidence, is in accord with the law, and is rational. Zettler v. Director, OWCP, United States Dep't of Labor, 886 F.2d 831, 834 (7th Cir.1989). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Velasquez v. Director, OWCP, 835 F.2d 262, 265 (10th Cir.1987).
 
 
 11
 Noting that the miner was diagnosed as having chronic obstructive pulmonary disease (COPD),[1] Petitioner first contends that COPD is considered pneumoconiosis if the COPD arose out of coal mine employment, and that COPD is presumed to arise out of coal mine employment pursuant to 20 C.F.R. §§ 718.203(b) and .302. These sections provide, "If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." (Emphasis added.)
 
 
 12
 Before the presumption in subsections .203(b) and .302 applies, however, it must first be established that a miner is suffering or suffered from pneumoconiosis. These subsections do not allow a presumption to be made that COPD is pneumoconiosis. Rather, once pneumoconiosis is shown, they allow a presumption to be made that the disease arose out of coal mine employment.
 
 
 13
 Competent medical evidence failed to establish that the miner's COPD was pneumoconiosis as defined in 20 C.F.R. § 718.201. COPD is included within the definition of pneumoconiosis if the COPD was "significantly related to, or substantially aggravated by, dust exposure in coal mine employment." Id. In Dr. Robert Hill's May, 1982, report he diagnosed the miner's condition as chronic obstructive lung disease and oat cell carcinoma of the lung but opined that the diagnosed condition was not related to dust exposure in the miner's coal mine employment. While Dr. Ward stated in an August 31, 1982, letter that the miner died of respiratory failure due to oat cell carcinoma of the lung and preexistent pulmonary disease probably of a chronic obstructive type, he did not give an opinion as to whether the condition was related to dust exposure in the miner's coal mine employment.
 
 
 14
 Petitioner argues that the ALJ improperly weighed the evidence which did establish that the miner suffered from pneumoconiosis, specifically, Dr. Adams' July 27, 1988, letter in which the doctor states that COPD had a significant involvement in the miner's death "and was a result of pneumoconiosis." R. II, CX 1. The ALJ gave little weight to Dr. Adams' letter because the record did not indicate Dr. Adams' relationship to the miner, or whether Dr. Adams had merely reviewed the records regarding the miner's death or participated in the care of the miner. "The ALJ is not bound to accept the opinion or theory of any given physician, but may weigh the medical evidence and draw his own inferences. We may not set aside an inference because we find the opposite one more reasonable or because we question its factual basis." American Coal Co. v. Benefits Review Bd., United States Dep't of Labor, 738 F.2d 387, 391 (10th Cir.1984).
 
 
 15
 Petitioner asserts that the ALJ should have given more weight to Dr. Adams' opinion because Dr. Adams was the miner's local physician and because he performed extensive tests as far back as 1973. However, the only basis for Dr. Adams' opinion appearing in the record is his interpretation of a June 19, 1973, x-ray as containing large opacities. Two other physicians read the same x-ray and concluded that it did not contain any large opacities. The ALJ concluded that more weight should be given to the negative interpretations because of the superior qualifications of those physicians, thereby discrediting the only basis for Dr. Adams' 1988 opinion that appears in the record. We conclude that the ALJ did not err in giving little weight to Dr. Adams' opinion.
 
 
 16
 Petitioner also argues that the ALJ erred in disregarding four lay affidavits concerning the miner's condition. The ALJ gave little weight to these affidavits because they contain conclusions by relatives and friends with no medical training. Lay affidavits may constitute evidence of death due to pneumoconiosis "[w]here there is no medical or other relevant evidence." 30 U.S.C. § 923(b). Because in this case there is medical evidence of the cause of death, the ALJ properly disregarded the lay affidavits.
 
 
 17
 Petitioner criticizes the ALJ's reliance on the death certificate signed by Dr. Ward which listed the cause of death as respiratory failure due to carcinoma of the lung. She notes that Dr. Ward wrote a later letter stating that the cause of death was both oat cell carcinoma of the lung and preexistent pulmonary disease probably of a chronic obstructive type. However, as previously noted, Dr. Ward did not give an opinion as to whether the pulmonary disease was significantly related to, or substantially aggravated by, dust exposure in coal mine employment. His opinion that death was due to COPD, without a further opinion as to the etiology of this condition, is insufficient.
 
 
 18
 Petitioner also criticizes the ALJ's reliance on Dr. Kennedy's opinion that coal miner's pneumoconiosis did not substantially contribute to the miner's death because Dr. Kennedy never treated the miner and is a consultant exclusively for the Department of Labor. We reiterate that it is the ALJ's function, rather than this court's, to weigh the medical evidence. We conclude that the medical evidence does not establish that the ALJ was wrong in denying the claim. See American Coal Co., 738 F.2d at 391.
 
 
 19
 Petitioner next contends that the ALJ erred by not affording her the presumption set forth in 20 C.F.R. § 718.304(a)-(c) that the miner's death was due to pneumoconiosis. This section creates an irrebuttable presumption that a miner's death was due to pneumoconiosis if he suffered from a chronic dust disease of the lung which: 1) when diagnosed by chest x-ray, yields one or more large opacities classified in Categories A,B, or C; or 2) when diagnosed by biopsy or autopsy, yields massive lesions in the lung; or 3) when diagnosed by other means would be a condition which could reasonably be expected to yield the results described above.
 
 
 20
 Petitioner contends that the ALJ erred by disregarding Dr. Adams' interpretation of the miner's 1973 x-ray as showing large opacities of size A. As discussed above, the ALJ gave little weight to Dr. Adams' interpretation in light of contrary interpretations of the same x-ray by Drs. Furnary and Moskowitz. Drs. Furnary and Moskowitz are both B readers. A "B reader" is a physician who has demonstrated proficiency in evaluating chest roentgenograms for pneumoconiosis by taking and passing a proficiency examination. 20 C.F.R. § 718.202(a)(1)(ii)(E). "The ALJ is entitled to place more weight to B-Readers' conclusions due to their expertise in the area." Johnson v. Island Creek Coal Co., 846 F.2d 364, 366 (6th Cir.1988). Substantial evidence supports the ALJ's determination that Petitioner did not establish entitlement to the irrebuttable presumption under subsection .304(a). Petitioner raises no arguments with respect to the ALJ's determination that she did not establish entitlement to the irrebuttable presumption under subsections .304(b) or (c).
 
 
 21
 Petitioner's next contention is that the ALJ erred by not affording her the presumptions set forth in 20 C.F.R. §§ 718.303(a) and .305(a). Subsection .303(a) creates a rebuttable presumption that if a deceased miner was employed for ten or more years in a coal mine and died from a respirable disease, the death was due to pneumoconiosis. Subsection .305(a) creates a rebuttable presumption that a miner's death was due to pneumoconiosis if the miner was employed for fifteen or more years in underground coal mines and a chest x-ray is submitted which is interpreted as negative with respect to the requirements of subsection .304, but other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment.
 
 
 22
 These presumptions only apply to claims filed before January 1, 1982. 20 C.F.R. §§ 718.303(c), .305(e). Petitioner argues that because the miner had a claim pending at the time of his death, her claim merged with his claim for purposes of applying these presumptions.
 
 
 23
 Merger of claims is provided for in 20 C.F.R. § 725.309. The Sixth Circuit has concluded that "[a] careful reading of the regulations indicate [sic] that they do not cover separate claims filed on behalf of the miner's estate and by an eligible survivor in her own right and on her own behalf." Earl Patton Coal Co. v. Patton, 848 F.2d 668, 672 (6th Cir.1988). We agree. Petitioner's claim did not merge with the miner's, and she cannot rely on the presumptions in subsections .303(a) and .305(a).
 
 
 24
 The Order of the Benefits Review Board is AFFIRMED.
 
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Respondent concedes that the miner was suffering from some form of chronic obstructive pulmonary disease. Brief of Respondent at 22